IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**ELBERT JAMES**                                                              **PLAINTIFF**

**VERSUS**                                           **CIVIL ACTION NO.  2:05cv2161KS-MTP**

**SOUTHERN PIONEER
INSURANCE COMPANY**                                                          **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the court on Motion for Summary Judgment **[#16/17]** filed on behalf of the defendant.  The court, having reviewed the motion, the response, the briefs of counsel, the pleadings and exhibits on file and being fully advised in the premises finds that the motion is well taken and should be granted.  The court specifically finds as follows:

## FACTUAL BACKGROUND

On or about August 13, 2004, Elbert James, the plaintiff, entered into a loan agreement with CMB Financial Services, Inc.  At the time the plaintiff executed the loan agreement, he opted to acquire credit life insurance and credit disability insurance to be provided by the defendant, Southern Pioneer.  The plaintiff was provided with a contract which stated the "Conditions of Coverage."  Included in the "Conditions of Coverage" was the following statement: "Definition of Total Disability—total disability means that you are not able to perform the duties of any occupation for which you are reasonably qualified by education, training or experience.  You will be required to give a written

proof of your continuing total disability from time to time."

On or about December 10, 2004, the plaintiff filed a claim for disability under the credit disability insurance held with Southern Pioneer. The "Insured's Statement of Disability" included an authorization for Southern Pioneer to obtain relevant medical information and a clause which stated "I understand that such information will be used by Southern Pioneer Life Insurance Company for the purpose of evaluating my claim for insurance benefits." This form was signed by the plaintiff and his employer.

On or about December 14, 2004, Southern Pioneer received and filed a "Life & Disability Claim Form" on the plaintiff's behalf. The form listed the plaintiff's injury as a herniated disc and recorded the date of disability as November 10, 2004. The form listed the particulars of plaintiff's policy and described the policy period as running from August 13, 2004 to August 13, 2006.

On or about December 15, 2004, Southern Pioneer mailed the first installment of the disability insurance to CMB Financial Services, Inc. ("CMB"). In addition, Southern Pioneer provided the plaintiff with a letter explaining the requirements associated with continued receipt of disability benefits under the policy. In accordance with the contract, Southern Pioneer requested that an "Application for Continuation of Benefits" form be completed by the plaintiff and his attending physician every 30 days during the time period the total disability continued. The letter explained that each time a disability payment was transmitted to CMB, the plaintiff would receive a copy of the check issued to CMB and a new "Application for Continuation of Benefits" form to be completed by the plaintiff and his attending physician.

On or about December 27, 2004, Southern Pioneer received the first "Application

for Continuation of Benefits" form from the plaintiff.  The plaintiff's attending physician, Michael Patterson, M.D., indicated that as of December 22, 2004, it was "unknown" as to how long the plaintiff's disability would continue and when the plaintiff could resume employment.  At that time, Southern Pioneer mailed the next installment of the disability insurance to CMB, and mailed the next "Application for Continuation of Benefits" form and accompanying letter of explanation to the plaintiff.

On or about February 3, 2005, Southern Pioneer began receiving the "Application for Continuation of Benefits" forms from the plaintiff.  Dr. Patterson, at that time, indicated that as of February 2, 2005, he expected the plaintiff's disability to last until February 3, 2005, at which time he could resume employment.  Southern Pioneer continued receiving the forms from the plaintiff at regular intervals until August 5, 2005.  During this interval, Dr. Patterson continued to opine that the plaintiff was totally disabled with varying recovery dates.

Dr. Patterson indicated that as of February 11, 2005, he expected the plaintiff's disability to last until May 11, 2005, and then next wrote, that as of February 24, 2005, his prognosis for the plaintiff's recovery had improved and that he now expected the plaintiff's disability to last only until April 1, 2005.  However, he stated in the next form that  as of March 11, 2005, he expected the plaintiff's disability to last until May 7, 2005, and then that as of May 4, 2005, he expected the plaintiff's disability to last until June 16, 2005.  On June 8, 2005, Dr. Patterson stated that he expected Plaintiff's disability to last until June 21, 2005.

On or about August 5, 2005, Southern Pioneer received the ninth "Application for Continuation of Benefits" form from the plaintiff.  Dr. Patterson indicated in that form

that as of August 2, 2005, it was "unknown" as to how long the plaintiff's disability would continue and when the plaintiff could resume employment.

The form also asked Southern Pioneer to "see attached letter."  Apparently, however, the referenced letter had actually been faxed three days prior, on August 2, 2005, by CMB to Southern Pioneer.  The letter was written by Dr. Patterson to the plaintiff's counsel in response to information provided by the plaintiff's counsel with regard to physical requirements of the plaintiff's employment.  It contained information about the plaintiff's ability to return to his former employment and will be discussed more fully below.

On or about August 4, 2005, Southern Pioneer mailed the next installment of the disability insurance to CMB, and mailed the next "Application for Continuation of Benefits" form and accompanying letter of explanation to the plaintiff.   On or about September 16, 2005, Southern Pioneer mailed another installment of the disability insurance to CMB, and mailed the next "Application for Continuation of Benefits" form and accompanying letter of explanation to the plaintiff.  The plaintiff failed to return these two forms.

After making two payments without receiving the required "Application for Continuation of Benefits" forms, Southern Pioneer suspended payments under the policy, but continued to send the "Application for Continuation of Benefits" forms to the plaintiff.   The plaintiff has failed to return any further forms, choosing instead to file the instant action alleging breach of contract.

## **STANDARD OF REVIEW**

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986). The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment. *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." Id. "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d

265, 272 (5th Cir. 1987).  Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial.  *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party.  *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion.  *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).  The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden:  the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]."  *John*, 757 F.2d at 708.  "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion.  *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence.  *Ferguson v.*

*National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).  In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact."  *In Re Municipal Bond Reporting Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982).  To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial.  Rule 56(e), Fed.R.Civ.P.  *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'"  *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## **ANALYSIS**

The plaintiff filed his original Complaint in the Circuit Court for Forrest County, Mississippi on November 17, 2005, alleging that Southern Pioneer was under an obligation to continue paying benefits under the policy after his counsel sent Dr. Patterson's letter of July 28, 2005, which he characterizes as a "final opinion", and that their failure to do so amounts to a breach of contract.  He has sued for contractual damages as well as actual and punitive damages for negligent and intentional infliction

of emotional and physical distress.  The defendant removed on the basis of diversity jurisdiction, and the matter is ripe for decision.

The plaintiff's primary contention is that Dr. Patterson's letter of July 28, 2005, amounts to a "final opinion" which explicitly indicates that the plaintiff is totally and permanently disabled and that the plaintiff was no longer under an obligation to furnish the required "Application for Continuation of Benefits" forms required by the defendant. The defendant contends that the form was a condition precedent to the continued payment of benefits.

The form submitted on August 5, 2005, made no reference to permanent disability, nor did it indicate that the disability would last indefinitely or that it would never lapse as argued by the plaintiff's counsel.  Rather Dr. Patterson employed the terminology "unknown", which had been previously used in assessing the plaintiff's progress on the initial "Application for Continuation of Benefits" form.  Additionally, Dr. Patterson marked out the word "totally" before disabled and wrote in "partially."

Further, the letter from Dr. Patterson to the plaintiff's counsel dated July 28, 2005, states that based upon the description of the plaintiff's employment provided by counsel that "working his [the plaintiff's] previous job" is "impossible".  The letter made no assertion that the plaintiff was permanently or even totally disabled as of that date, nor did it indicate that the disability that made the plaintiff's ability to work his previous job "impossible," as of July 28, 2005, would last indefinitely or that it would never lapse.

Neither the August 2 form nor the July 28 letter support the plaintiff's contention that he was deemed totally and permanently disabled by Dr. Patterson.  To the contrary, Dr. Patterson clearly found the plaintiff to only be "partially" disabled by

altering the August 2, 2005, form.  Dr. Patterson's July 28 letter do not conclude that the plaintiff cannot engage in any employment, it only states that it would be "impossible" for him to return to his former employment.  Frankly, these two documents taken together, do not foreclose a conclusion that the plaintiff did not, in fact, meet the definition of "totally disabled" under the policy.

Regardless of the foregoing, after a through review of the facts of this case, it is clear that Southern Pioneer made clear to the plaintiff, through the policy language and the letters of explanation, that a condition precedent to the continued payment of benefits was the return of the  "Application for Continuation of Benefits" forms on a monthly basis.  This is a valid provision of the contract which was not complied with by the plaintiff.  *See Provident Life & Acc. Ins. Co. v. Cumbest*, 325 So.2d 569, 571 (Miss. 1976).  The plaintiff has shown no genuine issue of material fact to the contrary.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment **[#16/17]** is Granted and the plaintiff's Complaint is dismissed with prejudice and that any other pending motions are dismissed as moot.

A separate judgment shall be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED, this the 13th day of October, 2006.

_____

s/ *Keith Starrett*
UNITED STATES DISTRICT JUDGE